# EXHIBIT A

Electronically Filed
11/18/2021 11:04 AM
Steven D. Grierson
CLERK OF THE COURT

1  JORDAN P. SCHNITZER, ESQ.
   Nevada Bar No. 10744
2  THE SCHNITZER LAW FIRM
   9205 W. Russell Road, Suite 240
3  Las Vegas, Nevada 89148
   Telephone: (702) 960-4050
4  Facsimile: (702) 960-4092
   Jordan@TheSchnitzerLawFirm.com
5
   GERALD F. NEAL, ESQ.
6  Nevada Bar No. 353
   GERALD F. NEAL ESQ., LLC
7  6765 W Charleston Blvd, Suite 130
   Las Vegas, NV 89146
8  Telephone: (702) 380-1234
   Facsimile: (702) 380-1292
9  Geraldfneal@aol.com

10 IAN PINKERT, ESQ. *(pro hac pending)*
   Florida Bar No. 84572
11 HALPERN, SANTOS & PINKERT, P.A.
   150 Alhambra Circle, Suite 1100
12 Coral Gables, Florida 33134
   Telephone: (305) 445-1111
13 Facsimile: (305) 445-1169
   ian@hsptrial.com
14
15 *Attorneys for Plaintiff*

CASE NO: A-21-844282-C
Department 4

16              **DISTRICT COURT**
17            **CLARK COUNTY, NEVADA**

18 MUSA UTHMAN, an Individual,            Case No.:

19              Plaintiff,                Dept. No.:

20 v.

21 MAGNETEK, INC., a foreign corporation;    **COMPLAINT**
22 COLUMBUS MCKINNON CORPORATION, a
   foreign corporation; ERGO ROBOTIC
23 SOLUTIONS, LLC, a foreign corporation; LAS
   VEGAS CONVENTION AND VISITORS
24 AUTHORITY, a political subdivision of the
   State of Nevada; COUNTY OF CLARK, a
25 political subdivision of the State of Nevada;
   DOES I through X, inclusive; ROE Corporations
26 I through X, inclusive;

27              Defendants.

28

                         1

COMES NOW, the Plaintiff, MUSA UTHMAN, by and through his undersigned counsel, and hereby complains and alleges against Defendants, MAGNETEK, INC., a foreign corporation, COLUMBUS MCKINNON CORPORATION, a foreign corporation, ERGO ROBOTIC SOLUTIONS, LLC, a foreign corporation, LAS VEGAS CONVENTION AND VISITORS AUTHORITY, a Political division of the State of Nevada, COUNTY OF CLARK, a Political subdivision of the State of Nevada, DOES I through X, inclusive and ROE Corporations I through X, inclusive, as follows:

**JURISDICTIONAL ALLEGATIONS AND IDENTIFICATION OF PARTIES**

1.      At all times relevant hereto, the Plaintiff, MUSA UTHMAN, is an individual over the age of eighteen and a resident of the County of Clark, State of Nevada.

2.      The Eighth Judicial District Court has jurisdiction over this civil tort action pursuant to NRCP 8(a)(4), NRS 4.370 and NRS 13.040 based upon the allegations herein and as the occurrence giving rise to this case took place in Clark County, Nevada and the amount in controversy exceeds $75,000.00.

3.      At all times relevant hereto, the Defendant, MAGNETEK, INC. ("MAGNETEK") is a Wisconsin corporation with its principal place of business located in Menomonee Falls, Wisconsin. The Defendant, MAGNETEK, is engaged in the business of designing, manufacturing, developing, distributing and/or selling motion control products and/or radio remote control products for equipment operations, specifically including a certain Flex Pro 8-Button Transmitter, hereinafter referred to as the "Subject Remote."

4.      At all times material hereto, the Defendant, MAGNETEK, operates, conducts, engages in or carries on business or a business venture in the State of Nevada or has an office or duly appointed agent in the State of Nevada.  The Defendant, MAGNETEK, engages in the solicitation of service activities within the State of Nevada, which resulted in the injuries to the Plaintiff described herein.  The Defendant's products, materials and items which are processed or serviced in this State in the ordinary course of commerce, trade or use, and that use, or consumption has resulted in the injuries to the Plaintiff, MUSA UTHMAN.

5.      At all times relevant hereto, the Defendant, COLUMBUS MCKINNON CORPORATION ("COLUMBUS") is a New York corporation with its principal place of business

2

located in New York.  The Defendant, COLUMBUS,  is engaged in the business of designing, manufacturing, developing, distributing and/or selling motion control products and/or radio remote control products for equipment operations, specifically including the Subject Remote.

6.    At all times material hereto, the Defendant, COLUMBUS,  operates, conducts, engages in or carries on business or a business venture in the State of Nevada or has an office or duly appointed agent in the State of Nevada.  The Defendant, COLUMBUS, engages in the solicitation of service activities within the State of Nevada, which resulted in the injuries to the Plaintiff described herein.  The Defendant's products, materials and items which are processed or serviced in this State in the ordinary course of commerce, trade or use, and that use, or consumption has resulted in the injuries to the Plaintiff, MUSA UTHMAN.

7.    At all times material hereto, the Defendant, MAGNETEK was and is a wholly owned subsidiary of the Defendant, COLUMBUS.

8.    At all times relevant hereto, the Defendant, ERGO ROBOTIC SOLUTIONS, LLC (hereinafter referred to as "ERGO") is a New York corporation with its principal place of business located in Queensbury, New York.  The Defendant, ERGO, is engaged in the business of designing, building, renting, leasing, manufacturing and/or selling glass installation equipment, specifically including the Skyhook WPI, hereinafter referred to as the "Subject Machine."

9.    At all times material hereto, the Defendant, ERGO,  operates, conducts, engages in or carries on business or a business venture in the State of Nevada or has an office or duly appointed agent in the State of Nevada.  The Defendant, ERGO, engages in the solicitation of service activities within the State of Nevada, which resulted in the injuries to the Plaintiff described herein.  The Defendant's products, materials and items which are processed or serviced in this State in the ordinary course of commerce, trade or use, and that use, or consumption has resulted in the injuries to the Plaintiff, MUSA UTHMAN.

10.    At all times relevant hereto, the Defendant, LAS VEGAS CONVENTION AND VISITORS AUTHORITY (hereinafter referred to as "LVCVA"), was a Nevada corporation, with its principal place of business located at the Las Vegas Convention Center, 3150 Paradise Rd., Las Vegas, NV 89109, hereinafter referred to as the "Subject Premises."

3

11.     At all times relevant hereto, the Defendant, LVCVA, owned, operated, controlled and/or maintained the Subject Premises.

12.     At all times relevant hereto, the Defendant, COUNTY OF CLARK (hereinafter referred to as "COUNTY OF CLARK"), was a Political Subdivision of the State of Nevada.

13.     At all times relevant hereto, the Defendant, COUNTY OF CLARK, owned, operated, controlled and/or maintained the Subject Premises.

14.     The true names or capacities, whether individual, corporate, associate or otherwise of Defendants DOES I through X, inclusive, and/or ROES CORPORATIONS I through X, inclusive, are unknown to Plaintiff who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed, believes and alleges that Defendants designated herein as a DOE and/or ROE CORPORATIONS are any one of the following:

    a.  A party responsible in some manner for the designing, constructing, managing, distributing and/or manufacturing of the Remote, including, but not limited to, the Subject Remote;

    b.  A party that is parent and/or subsidiary corporation of any Defendant involved in the design, manufacturing, distribution and/or management of the Remote;

    c.  A party that is parent and/or subsidiary corporation of any Defendant involved in some manner for the training, certifying and/or supervising the Machine, including, but not limited to the Subject Machine

    d.  A party that is parent and/or subsidiary corporation of any Defendant responsible for the renting, leasing, sale, designing, constructing, managing, distributing and/or manufacturing of the Machine, including, but not limited to the Subject Machine;

    e.  A party responsible in some manner for the training, certifying and/or supervising the Machine, including, but not limited to the Subject Machine;

    f.  A party responsible for the renting, leasing, sale, designing, constructing, managing, distributing and/or manufacturing of the Machine, including, but not limited to the Subject Machine;

4

g. Parties that were responsible in any way for the operation and design between the Machine and Remote;

h. Parties that were the agents, servants, authorities and contractors of the Defendants, each of them acting within the course and scope of their agency, employment, or contract;

i. Parties that own, lease, manage, operate, secure, inspect, repair, maintain and/or are responsible for the Subject Machine and/or Subject Remote at the time of the subject incident;

j.  Parties that are responsible for the inspection, operation, maintenance, repair of the Subject Machine and/or Subject Remote while located at the Subject Premises;

k. Parties that are responsible for the Subject Premises; and/or

l. Parties that have assumed or retained the liabilities of any of the Defendants by virtue of an agreement, sale, transfer or otherwise.

## GENERAL ALLEGATIONS

15.     On or about the morning November 19, 2019, the Plaintiff, MUSA UTHMAN, was working for Crown Corr, Inc., on a project at the Subject Premises for the installation of large glass windows for the Las Vegas Convention Center/ Subject Premises in Clark County, Nevada.

16.     On said date, the Plaintiff, MUSA UTHMAN, was elevated on a scissor lift to assist in placing a large glass window into the proper location of the Las Vegas Convention Center.

17.     At the same time, another employee of Crown Corr, Inc. was using a Remote, hereinafter referred to as the "Subject Remote," to maneuver the large piece of glass with a Machine, hereinafter referred to as the "Subject Machine."

18.     When the glass was in position, the Plaintiff, MUSA UTHMAN advised the other employee operating the Subject Remote/ Subject Machine to "release the cups."

19.     At that time, the employee operating the Subject Remote attempted to press the button(s)/input(s) of the Subject Remote to "release the cups."     Unfortunately, the cups did not release as the employee mistakenly, inadvertently and/or unintentionally failed to input and/or press the correct button(s) and/or function(s) of the Subject Remote.

20.     Suddenly and without warning, the large piece of glass rotated, tilted, and/or turned,

striking the scissor lift occupied by the Plaintiff, causing the lift with the Plaintiff to fall.

21.    As a direct and proximate result, the Plaintiff, MUSA UTHMAN suffered serious and permanent injuries, including, but not limited to, fracture to left wrist requiring surgical intervention, multiple lacerations and a brain injury, which all required extensive medical care and treatment.

22.    At all times relevant hereto, the Subject Remote was designed, manufactured, sold and/or distributed by the Defendant, MAGNETEK.

23.    Prior to November 19, 2019, the Subject Remote was leased and/or purchased by the Defendant, ERGO.

24.    At all times relevant hereto, the Defendant, ERGO, owned, leased, maintained, controlled and/or rented the Subject Machine.

25.    At all times relevant hereto, the Defendant, LVCVA, owned and/or maintained the Subject Premises where the subject incident occurred.

26.    At all times relevant hereto, the Defendant, STATE OF NEVADA, owned and/or maintained the Subject Premises where the subject incident occurred.

### FIRST CAUSE OF ACTION

### (Negligence — Magnetek)

27.    Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 26 as though fully set forth herein.

28.    At all times material hereto, Defendant, MAGNETEK was engaged in the business of designing, manufacturing, assembling, distributing and/or selling radio remote controls for equipment operation and in fact designed, manufactured, assembled, distributed and/or sold the Remote including the Subject Remote involved in this action.

29.    At all times material hereto, Defendant, MAGNETEK owed the duty, including to the Plaintiff, to design, manufacture, assemble, inspect and/or test its remotes, including the Subject Remote, in such a manner and with the exercise of reasonable care, that the Subject Remote was fit and reasonably safe for its foreseeable uses and misuses at the time it was no longer in MAGENTEK's, possession, custody and/or control.

//

30.     At all times material hereto, the Defendant, MAGNETEK, owed a duty to warn consumers or intended users of the Subject Remote of defects which it knew or should have known in the exercise of ordinary care existed in the Subject Remote, which defects rendered the Subject Remote unreasonably dangerous to use.

31.     The Defendant, MAGNETEK breached its duty of reasonable care in various ways, including, but not limited to, one or more of the following negligent acts:

    a.  Negligently failed to design the Subject Remote in conformity with the prevailing industry standard, specifications and/or best practices for safe operation and use;

    b.  Negligently designed the Subject Remote such that simultaneous operation of two buttons does not cause the function/transmission to stop (i.e. no interlock inhibiting operation);

    c.  Negligently designed the Remote in a manner that was unreasonably dangerous for use by ordinary and/or intended user(s);

    d.  Negligently designed the Subject Remote in such a way that the activated function is unclear and/or not obvious;

    e.  Negligently designed the Subject Remote such that it lacks unequivocal positive identification of the state of operation;

    f.  Negligently designed the Subject Remote without proper and/or appropriate safeguards against unintended operation and/or unintentional user input, which unintended operation and/or unintentional user input was foreseeable to the Defendant;

    g.  Negligently designed the Subject Remote such that the buttons have multiple functions, including functions that are significantly different, and in a manner where it is unclear as to the function that is currently actuated;

    h.  Negligently failed to design the Subject Remote without an appropriately shaped emergency stop button in violation of NFPA 79;

    i.  Negligently designed the Subject Remote with an emergency stop button that was not safely and/or properly identified, including, but not limited to, an

7

emergency stop button without clear identifying label(s) and/or an emergency stop button that was not properly and/or safely sized for the Subject Remote;

j.  Negligently failed to warn users of the Subject Remote of said defective, dangerous and hazardous conditions relating to the Subject Remote, which it knew or should have known through the exercise of ordinary care of said dangerous and hazardous conditions;

k.  Negligently designed the Subject Remote without a warning that adequately communicated the dangers that may result from its use or foreseeable misuse;

l.  Negligently designed the Subject Remote without proper and/or appropriate warning reasonably expected to catch the attention of the consumer;

m.  Negligently designed the Subject Remote without warning that is comprehensible and gives a fair indication of the specific risks involved with the produce;

n.  Negligently designed the Subject Remote without warning that is of appropriate and proper intensity given the magnitude of the risk involved in use of Subject Remote;

o.  Negligently designed the Subject Remote without acknowledgement function to confirm intended operation and/or input by operator; and/or user

p.  Negligently designed the Subject Remote in such a manner that there was a propensity for unintended operation and/or unintentional input; and/or

q.  Negligently failed to inspect and/or test the Subject Remote so as to the discover the dangerous, unsafe and/or hazardous design.

32.  Defendant, MAGNETEK knew and/or should have known that exposing users to the dangerous and defective and hazardous condition existing in the Subject Remote would give rise to serious bodily injuries, as suffered by the Plaintiff, MUSA UTHMAN.

33.  As a direct and proximate result of Defendant, MAGNETEK's negligence, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of

the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

34.    MUSA UTHMAN's damage as a direct and proximate result of the aforesaid acts are in excess of $15,000.

35.    It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

<u>**SECOND CAUSE OF ACTION**</u>

(**Strict Liability — Magnetek**)

36.    Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 36 as though fully set forth herein.

37.    The Defendant, MAGNETEK, designed, manufactured, distributed and/or sold the Remote, including the Subject Remote, in a defective condition that was unreasonably dangerous.

38.    The Defendant, MAGNETEK, pursuant to Nevada law, must design its products, including, but not limited to, the Subject Remote, with a warning that was: (1) reasonably expected to catch the attention of the consumer; (2) be comprehensible and give a fair indication of the specific risks involved with the produce; and (3) be of an intensity justified by the magnitude of the risk.

39.    Said product, to wit, the Subject Remote, was unreasonably dangerous because of its design characteristics, lack of warnings, use of inappropriate materials, manufacturing defects and/or, processing defects, including but not limited to:

    a.    Failed to design the Subject Remote in conformity with the prevailing industry standard, specifications and/or best practices for safe operation and use;

    b.    Designed the Remote that was unreasonably dangerous for use by ordinary and/or intended user(s);

//
//

9

c.  Designed the Subject Remote such that simultaneous operation of two buttons does not cause the function/transmission to stop (i.e. no interlock inhibiting operation);

d.  Designed the Subject Remote in such a way that the activated function is unclear and/or not obvious;

e.  Designed the Subject Remote such that it lacks unequivocal positive identification of the state of operation;

f.  Designed the Subject Remote without proper and/or appropriate safeguards against unintended operation and/or unintentional user input, which unintended operation and/or unintentional user input was foreseeable to the Defendant;

g.  Designed the Subject Remote such that the buttons have multiple functions, including functions that are significantly different, and in a manner where it is unclear as to the function that is currently actuated;

h.  Failed to design the Subject Remote without an appropriately shaped emergency stop button in violation of NFPA 79;

i.  Designed the Subject Remote with an emergency stop button that was not safely and/or properly identified, including, but not limited to an emergency stop button without clear identifying label(s) and/or an emergency stop button that was not properly and/or safely sized for the Subject Remote;

j.  Failed to warn users of the Subject Remote of said defective, dangerous and hazardous conditions, relating to the Subject Remote, which it knew or should have known through the exercise of ordinary care of said dangerous and hazardous conditions;

k.  Designed the Subject Remote without proper and/or appropriate warning reasonably expected to catch the attention of the consumer;

l.  Designed the Subject Remote without warning that is comprehensible and gives a fair indication of the specific risks involved with the produce;

m.  Designed the Subject Remote without warning that is of appropriate and proper intensity given the magnitude of the risk involved in use of Subject Remote;

10

n.  Designed the Subject Remote without acknowledgement function to confirm intended operation and/or input by operator and/or user;

o.  Designed the Subject Remote without a warning that adequately communicated the dangers that may result from its use or foreseeable misuse; and/or

p.  Designed the Subject Remote in such a manner that there was a propensity for unintended operation and/or unintentional input;

40.  The Defendant, MAGNETEK, is in the business of designing, manufacturing, distributing and/or selling remote, including the Subject Remote.  This Defendant is responsible for placing the Subject Remote into the stream of commerce.

41.  The Subject Remote failed to perform in the manner reasonably to be expected in light of its nature and intended function.

42.  The Subject Remote was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community.

43.  The Subject Remote was being used for its intended purpose and in a foreseeable manner at the time of injury, and the Plaintiff was in the foreseeable zone of danger based upon that foreseeable use.

44.  At the time of design, manufacture and/or sale of the Subject Remote, unintended operation and/or unintentional input of the Subject Remote was foreseeable to the Defendant, MAGNETEK.

45.  The Subject Remote was transferred from the Defendant, MAGNETEK's possession, in a defective condition, and the Subject Remote was substantially unaltered from the time it left the control of MAGNETEK up to the date of the subject incident, on or about November 19, 2019.

46.  As a direct and proximate result of Defendant, MAGNETEK's strict liability, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability

was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

47.     MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

48.     It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

### THIRD CAUSE OF ACTION

### (Negligence — Columbus)

49.     Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 48 as though fully set forth herein.

50.     At all times material hereto, Defendant, COLUMBUS was engaged in the business of designing, manufacturing, assembling, distributing and/or selling radio remote controls for equipment operation and in fact designed, manufactured, assembled, distributed and/or sold the Remote including the Subject Remote involved in this action.

51.     At all times material hereto, Defendant, COLUMBUS owed the duty, including to the Plaintiff, to design, manufacture, assemble, inspect and/or test its remotes, including the Subject Remote, in such a manner and with the exercise of reasonable care, that the Subject Remote was fit and reasonably safe for its foreseeable uses and misuses at the time it was no longer in MAGENTEK's, possession, custody and/or control.

52.     At all times material hereto, the Defendant, COLUMBUS, owed a duty to warn consumers or intended users of the Subject Remote of defects which it knew or should have known in the exercise of ordinary care existed in the Subject Remote, which defects rendered the Subject Remote unreasonably dangerous to use.

53.     The Defendant, COLUMBUS breached its duty of reasonable care in various ways, including, but not limited to, one or more of the following negligent acts:

    a.   Negligently failed to design the Subject Remote in conformity with the prevailing industry standard, specifications and/or best practices for safe operation and use;

//

12

b.  Negligently designed the Subject Remote such that simultaneous operation of two buttons does not cause the function/transmission to stop (i.e. no interlock inhibiting operation);

c.  Negligently designed the Remote in a manner that was unreasonably dangerous for use by ordinary and/or intended user(s);

d.  Negligently designed the Subject Remote in such a way that the activated function is unclear and/or not obvious;

e.  Negligently designed the Subject Remote such that it lacks unequivocal positive identification of the state of operation;

f.  Negligently designed the Subject Remote without proper and/or appropriate safeguards against unintended operation and/or unintentional user input, which unintended operation and/or unintentional user input was foreseeable to the Defendant;

g.  Negligently designed the Subject Remote such that the buttons have multiple functions, including functions that are significantly different, and in a manner where it is unclear as to the function that is currently actuated;

h.  Negligently failed to design the Subject Remote without an appropriately shaped emergency stop button in violation of NFPA 79;

i.  Negligently designed the Subject Remote with an emergency stop button that was not safely and/or properly identified, including, but not limited to, an emergency stop button without clear identifying label(s) and/or an emergency stop button that was not properly and/or safely sized for the Subject Remote;

j.  Negligently failed to warn users of the Subject Remote of said defective, dangerous and hazardous conditions relating to the Subject Remote, which it knew or should have known through the exercise of ordinary care of said dangerous and hazardous conditions;

k.  Negligently designed the Subject Remote without a warning that adequately communicated the dangers that may result from its use or foreseeable misuse;

//

13

l.  Negligently designed the Subject Remote without proper and/or appropriate warning reasonably expected to catch the attention of the consumer;

m.  Negligently designed the Subject Remote without warning that is comprehensible and gives a fair indication of the specific risks involved with the produce;

n.  Negligently designed the Subject Remote without warning that is of appropriate and proper intensity given the magnitude of the risk involved in use of Subject Remote;

o.  Negligently designed the Subject Remote without acknowledgement function to confirm intended operation and/or input by operator and/or user;

p.  Negligently designed the Subject Remote in such a manner that there was a propensity for unintended operation and/or unintentional input; and/or

q.  Negligently failed to inspect and/or test the Subject Remote so as to the discover the dangerous, unsafe and/or hazardous design.

54.    Defendant, MAGNETEK knew and/or should have known that exposing users to the dangerous and defective and hazardous condition existing in the Subject Remote would give rise to serious bodily injuries, as suffered by the Plaintiff, MUSA UTHMAN.

55.    As a direct and proximate result of Defendant, MAGNETEK's negligence, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

56.    MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

57.    It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

**FOURTH CAUSE OF ACTION**

(**Strict Liability — Columbus**)

58.     Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 57 as though fully set forth herein.

59.     The Defendant, COLUMBUS, designed, manufactured, distributed and/or sold the Remote, including the Subject Remote, in a defective condition that was unreasonably dangerous.

60.     The Defendant, COLUMBUS, pursuant to Nevada law, must design its products, including, but not limited to, the Subject Remote, with a warning that was: (1) reasonably expected to catch the attention of the consumer; (2) be comprehensible and give a fair indication of the specific risks involved with the produce; and (3) be of an intensity justified by the magnitude of the risk.

61.     Said product, to wit, the Subject Remote, was unreasonably dangerous because of its design characteristics, lack of warnings, use of inappropriate materials, manufacturing defects and/or, processing defects, including but not limited to:

    a.  Failed to design the Subject Remote in conformity with the prevailing industry standard, specifications and/or best practices for safe operation and use;

    b.  Designed the Remote that was unreasonably dangerous for use by ordinary and/or intended user(s);

    c.  Designed the Subject Remote such that simultaneous operation of two buttons does not cause the function/transmission to stop (i.e. no interlock inhibiting operation);

    d.  Designed the Subject Remote in such a way that the activated function is unclear and/or not obvious;

    e.  Designed the Subject Remote such that it lacks unequivocal positive identification of the state of operation;

    f.  Designed the Subject Remote without proper and/or appropriate safeguards against unintended operation and/or unintentional user input, which unintended operation and/or unintentional user input was foreseeable to the Defendant;

//

g. Designed the Subject Remote such that the buttons have multiple functions, including functions that are significantly different, and in a manner where it is unclear as to the function that is currently actuated;

h. Failed to design the Subject Remote without an appropriately shaped emergency stop button in violation of NFPA 79;

i. Designed the Subject Remote with an emergency stop button that was not safely and/or properly identified, including, but not limited to an emergency stop button without clear identifying label(s) and/or an emergency stop button that was not properly and/or safely sized for the Subject Remote;

j. Failed to warn users of the Subject Remote of said defective, dangerous and hazardous conditions, relating to the Subject Remote, which it knew or should have known through the exercise of ordinary care of said dangerous and hazardous conditions;

k. Designed the Subject Remote without proper and/or appropriate warning reasonably expected to catch the attention of the consumer;

l. Designed the Subject Remote without warning that is comprehensible and gives a fair indication of the specific risks involved with the produce;

m. Designed the Subject Remote without warning that is of appropriate and proper intensity given the magnitude of the risk involved in use of Subject Remote;

n. Designed the Subject Remote without acknowledgement function to confirm intended operation and/or input by operator and/or user;

o. Designed the Subject Remote without a warning that adequately communicated the dangers that may result from its use or foreseeable misuse; and/or

p. Designed the Subject Remote in such a manner that there was a propensity for unintended operation and/or unintentional input;

62.   The Defendant, COLUMBUS, is in the business of designing, manufacturing, distributing and/or selling remote, including the Subject Remote.  This Defendant is responsible for placing the Subject Remote into the stream of commerce.

//

16

63.     The Subject Remote failed to perform in the manner reasonably to be expected in light of its nature and intended function.

64.     The Subject Remote was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community.

65.     The Subject Remote was being used for its intended purpose and in a foreseeable manner at the time of injury, and the Plaintiff was in the foreseeable zone of danger based upon that foreseeable use.

66.     At the time of design, manufacture and/or sale of the Subject Remote, unintended operation and/or unintentional input of the Subject Remote was foreseeable to the Defendant, COLUMBUS.

67.     The Subject Remote was transferred from the Defendant, COLUMBUS' possession, in a defective condition, and the Subject Remote was substantially unaltered from the time it left the control of COLUMBUS up to the date of the subject incident, on or about November 19, 2019.

68.     As a direct and proximate result of Defendant, COLUMBUS' strict liability, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

69.     MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

70.     It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

//

//

17

## **FIFTH CAUSE OF ACTION**

### (**Negligence — Ergo**)

71.     Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 70 as though fully set forth herein.

72.     At all times material hereto, the Defendant, ERGO, owed a duty, including to the Plaintiff, to train, warn, design, manufacture, assemble, inspect and/or test its equipment, including the Subject Machine, in such a manner and with the exercise of reasonable care, that the Subject Machine was fit and reasonably safe for its foreseeable uses and misuses.

73.     The Defendant, ERGO, breached the above-described duty of care as a result of one or more of the following negligent acts:

    a.   Negligently failing to provide and/or ensure proper and appropriate training on the use and operation of the Subject Machine;

    b.   Negligently failing to provide a user a proper, complete and/or appropriate user manual for the subject Machine;

    c.   Negligently failing to provide appropriate and/or proper supervision of the Subject Machine;

    d.   Negligently failing to provide and/or ensure that known that users of the Subject Machine were properly certified for use of the Subject Machine;

    e.   Negligently choosing, labeling, selecting and/or designing the button(s) of the Subject Remote with dual functions for the Subject Machine that are significantly and/or completely different (i.e. "tilt down" and "release" function on the same button);

    f.   Negligently failed to design the Subject Machine in conformity with the prevailing industry standard, specifications and/or best practices for safe operation and use;

    g.   Negligently designed the Subject Machine that was unreasonably dangerous for use by ordinary and/or intended user(s);

    h.   Negligently designed the Subject Machine such that simultaneous operation and/or activation of two buttons controlling the Subject Machine does not cause the function/transmission to stop (i.e. no interlock inhibiting operation);

18

i.   Negligently designed the Subject Machine in such a way that the activated function is unclear and/or not obvious;

j.   Negligently designed the Subject Machine such that it lacks unequivocal positive identification of the state of operation;

k.   Negligently the Subject Machine without proper and/or appropriate safeguards against unintended operation and/or unintentional user input, which unintended operation and/or unintentional user input was foreseeable to the Defendant;

l.   Negligently designed the Subject Machine such that the buttons have multiple functions, including functions that are significantly different, and in a manner where it is unclear as to the function that is currently actuated;

m.   Negligently failed to design the Subject Machine without an appropriately shaped emergency stop button in violation of NFPA 79;

n.   Negligently designed the Subject Machine for use with an emergency stop button that was not safely and/or properly identified, including, but not limited to an emergency stop button without clear identifying label(s) and/or an emergency stop button that was not properly and/or safely sized for Remote designed for use with the Subject Machine;

o.   Negligently failed to warn users of the Subject Machine of said defective, dangerous and/or hazardous conditions, relating to the Subject Machine, which it knew or should have known through the exercise of ordinary care of said dangerous and hazardous conditions;

p.   Negligently designed the Subject Machine without proper and/or appropriate warning(s) reasonably expected to catch the attention of the consumer;

q.   Negligently designed the Subject Machine without warning that is comprehensible and gives a fair indication of the specific risks involved with the produce;

r.   Negligently designed the Subject Machine without warning that is of appropriate and proper intensity given the magnitude of the risk involved in use of Subject Remote;

//

19

s.   Negligently designed the Subject Machine without a warning that adequately communicated the dangers that may result from its use or foreseeable misuse; and/or

t.   Negligently designed the Subject Machine in such a manner that there was a propensity for unintended operation and/or unintentional input;

u.   Negligently designed Subject Machine with a Remote with dual functions for the that are significantly and/or completely different (i.e. "tilt down" and "release" function on the same button);

v.   Negligently designed the Subject Machine with a Remote that has dual function buttons that are significantly and/or completely different;

w.   Negligently designed the Subject Machine without appropriate and/or proper fail-safe guards and/or preventions;

x.   Negligently designed without appropriate and/or proper warnings of the dangers associated with the operation of the Subject Machine, which it knew or should have known through the exercise of ordinary care of said dangers.

y.   Negligently designing the Subject Machine with a Remote that has dual function buttons that are significantly and/or completely different;

z.   Negligently designing the Subject Machine without a fail-safe Remote and/or control;

aa.  Negligently designed the Subject Machine without an acknowledgement function to confirm intended operation and/or input by operator and/or user;

bb.  Negligently failing to warn users of the Subject Machine of the dangers associated with the operation of the Subject Machine without proper and/or appropriate training and/or certification; and/or

cc.  Negligently failing to provide appropriate and/or proper warnings of the dangers associated with the operation of the Subject Machine, which it knew or should have known through the exercise of ordinary care of said dangers.

74.   Defendant, ERGO knew and/or should have known that exposing and/or allowing users to operate the Subject Machine without appropriate, complete and/or proper training and/or

20

certification, would give rise to serious bodily injuries, such as suffered by the Plaintiff, MUSA UTHMAN.

75.     As a direct and proximate result of Defendant, ERGO's negligence, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

76.     MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

77.     It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

## SIXTH CAUSE OF ACTION

### (Negligent Entrustment — Ergo)

78.     Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 77 as though fully set forth herein.

79.     At all times relevant hereto, the Defendant, ERGO, owned, controlled, leased, loaned and/or rented the Subject Machine, which Subject Machine was dangerous.

80.     At all times relevant hereto, the Defendant, ERGO, provided consent and/or permission for Crown Corr, Inc. including, but not limited to, employees, agents, and/or contractors of Crown Corr, Inc., to use the Subject Machine.

81.     At all times relevant hereto, the Defendant, ERGO, knew and/or should have known that Crown Corr, Inc. including, but not limited to, employees, agents, and/or contractors of Crown Corr, Inc., were using and/or operating the Subject Machine.

82.     At all times relevant hereto, the Defendant, ERGO, knew and/or should have known that that Crown Corr, Inc. including, but not limited to, employees, agents, and/or

contractors of Crown Corr, Inc., were inexperienced and/or incompetent to safely use and/or operate the Subject Machine.

83. On or about November 19, 2019, an employee of Crown Corr, Inc. negligently operated the Subject Machine with the Subject Remote and thereby caused harm to the Plaintiff, MUSA UTHMAN.

84. As a result of the negligent operation of the Subject Machine by the entrusted employee, the Plaintiff, MUSA UTHMAN, suffered injuries and damages.

85. As a direct and proximate result of Defendant, ERGO's negligent entrustment, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

86. MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

87. It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

### SEVENTH CAUSE OF ACTION

#### (Strict Liability — Ergo)

88. Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 87 as though fully set forth herein.

89. The Defendant, ERGO, designed, leased, rented, loaned, manufactured, distributed and/or sold the Machine, including the Subject Machine, in a defective condition that was unreasonably dangerous.

90. The Defendant, ERGO, pursuant to Nevada law, must design its products, including, but not limited to, the Subject Remote, with a warning that was: (1) reasonably

expected to catch the attention of the consumer; (2) be comprehensible and give a fair indication of the specific risks involved with the produce; and (3) be of an intensity justified by the magnitude of the risk.

91.     Said product, to wit, the Subject Machine, was unreasonably dangerous because of its design characteristics, lack of warnings, use of inappropriate materials, manufacturing defects and/or, processing defects, including but not limited to:

a.   Failed to design the Subject Machine in conformity with the prevailing industry standard, specifications and/or best practices for safe operation and use;

b.   Designed the Machine that was unreasonably dangerous for use by ordinary and/or intended user(s);

c.   Designed the Subject Machine such that simultaneous operation and/or activation of two buttons controlling the Subject Machine does not cause the function/transmission to stop (i.e. no interlock inhibiting operation);

d.   Designed the Subject Machine in such a way that the activated function is unclear and/or not obvious;

e.   Designed the Subject Machine such that it lacks unequivocal positive identification of the state of operation;

f.   Designed the Subject Machine without proper and/or appropriate safeguards against unintended operation and/or unintentional user input, which unintended operation and/or unintentional user input was foreseeable to the Defendant;

g.   Designed the Subject Machine such that the buttons have multiple functions, including functions that are significantly different, and in a manner where it is unclear as to the function that is currently actuated;

h.   Failed to design the Subject Machine without an appropriately shaped emergency stop button in violation of NFPA 79;

i.   Designed the Subject Machine for use with an emergency stop button that was not safely and/or properly identified, including, but not limited to an emergency stop button without clear identifying label(s) and/or an emergency stop button that was

not properly and/or safely sized for Remote designed for use with the Subject Machine;

j.   Failed to warn users of the Subject Machine of said defective, dangerous and/or hazardous conditions, relating to the Subject Machine, which it knew or should have known through the exercise of ordinary care of said dangerous and hazardous conditions;

k.   Designed the Subject Machine without proper and/or appropriate warning reasonably expected to catch the attention of the consumer;

l.   Designed the Subject Machine without warning that is comprehensible and gives a fair indication of the specific risks involved with the produce;

m.   Designed the Subject Machine without warning that is of appropriate and proper intensity given the magnitude of the risk involved in use of Subject Remote;

n.   Designed the Subject Machine without a warning that adequately communicated the dangers that may result from its use or foreseeable misuse; and/or

o.   Designed the Subject Machine in such a manner that there was a propensity for unintended operation and/or unintentional input;

p.   Designed Subject Machine with a Remote with dual functions for the that are significantly and/or completely different (i.e. "tilt down" and "release" function on the same button);

q.   Designed the Subject Machine without appropriate and/or proper fail-safe guards and/or preventions;

r.   Designed the Subject Machine with a Remote that has dual function buttons that are significantly and/or completely different;

s.   Designed the Subject Machine without an acknowledgement function to confirm intended operation and/or input by operator and/or user;

t.   Designed the Subject Machine without a fail-safe Remote and/or control; and/or

u.   Designed without appropriate and/or proper warnings of the dangers associated with the operation of the Subject Machine, which it knew or should have known through the exercise of ordinary care of said dangers.

24

92.     The Defendant, ERGO, is in the business of designing, leasing, renting, loaning, manufacturing, distributing and/or selling equipment, including the Machine and/or Subject Machine.  This Defendant is responsible for placing the Subject Machine into the stream of commerce.

93.     The Subject Machine failed to perform in the manner reasonably to be expected in light of its nature and intended function.

94.     The Subject Machine was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community.

95.     The Subject Machine was being used for its intended purpose and in a foreseeable manner at the time of injury, and the Plaintiff was in the foreseeable zone of danger based upon that foreseeable use.

96.     At the time of design, manufacture, lease, loan, rent and/or sale of the Subject Machine, unintended operation and/or unintentional input of the Subject Machine was foreseeable to the Defendant, ERGO.

97.     The Subject Machine was transferred from the Defendant, ERGO's possession, in a defective condition, and the Subject Machine was substantially unaltered from the time it left the control of ERGO up to the date of the subject incident, on or about November 19, 2019.

98.     As a direct and proximate result of Defendant, ERGO's strict liability, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

99.     MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

//

//

100.     It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

## EIGHTH CAUSE OF ACTION

### (**Negligence — LVCVA**)

101.     Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 100 as though fully set forth herein.

102.     At all times relevant hereto, the Defendant, LVCVA, as the owner and/or operator of the Subject Premises, owed a duty to provide, operate, maintain and/or control the Subject Premises in a reasonably safe condition, free from any dangerous and/or hazardous conditions.

103.     At all times relevant hereto, the Defendant, LVCVA, owed a duty to warn of any known dangerous conditions on the Subject Premises.

104.     The Defendant, LVCVA, breached the above-described duties of care as a result of one or more of the following acts:

   a.   Despite knowledge and notice, negligently allowing the dangerous Subject Machine on the Subject Premises;

   b.   Despite knowledge and notice, negligently allowing Crown Corr, Inc. to operate the Subject Machine on the Subject Premises when LVCVA knew and/or should have that Crown Corr, Inc. was unfit to operate the Subject Machine;

   c.   Despite knowledge and notice, negligently failing to ensure that the dangerous Subject Machine was used and/or operated properly;

   d.   Despite knowledge and notice, negligently failed to inspect the Subject Premises for dangers and/or hazards; and/or

   e.   Despite knowledge and notice, negligently failing to warn of the dangers associated with the dangerous Subject machine.

105.     Said dangerous and hazardous conditions were known and/or should have been known to the Defendant, LVCVA.

106.     As a direct and proximate result of Defendant, LVCVA's negligence, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or

aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMAN will suffer such losses and impairment in the future.

107.    MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

108.    It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

## NINTH CAUSE OF ACTION

### (Negligence — COUNTY OF CLARK)

109.    Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 108 as though fully set forth herein.

110.    At all times relevant hereto, the Defendant, COUNTY OF CLARK, as the owner and/or operator of the Subject Premises, owed a duty to provide, operate, maintain and/or control the Subject Premises in a reasonably safe condition, free from any dangerous and/or hazardous conditions.

111.    At all times relevant hereto, the Defendant, COUNTY OF CLARK, owed a duty to warn of any known dangerous conditions on the Subject Premises.

112.    The Defendant, COUNTY OF CLARK, breached the above-described duties of care as a result of one or more of the following acts:

    a.    Despite knowledge and notice, negligently allowing the dangerous Subject Machine on the Subject Premises;

    b.    Despite knowledge and notice, negligently allowing Crown Corr, Inc. to operate the Subject Machine on the Subject Premises when the COUNTY OF CLARK knew and/or should have that Crown Corr, Inc. was unfit to operate the Subject Machine;

27

c.  Despite knowledge and notice, negligently failing to ensure that the dangerous Subject Machine was used and/or operated properly;

d.  Despite knowledge and notice, negligently failed to inspect the Subject Premises for dangers and/or hazards; and/or

e.  Despite knowledge and notice, negligently failing to warn of the dangers associated with the dangerous Subject machine.

113.   Said dangerous and hazardous conditions were known and/or should have been known to the Defendant, COUNTY OF CLARK.

114.   As a direct and proximate result of Defendant, COUNTY OF CLARK's negligence, the Plaintiff, MUSA UTHMAN was injured in and about his body, head, face and/or extremities and/or aggravated a pre-existing condition, sustained bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical handicap, loss of earnings, incurred medical, nursing, attendant care and life care expenses for his care and treatment and his working ability was impaired; said injuries are either permanent or continuing in their nature and MUSA UTHMANMUSA UTHMAN will suffer such losses and impairment in the future.

115.   MUSA UTHMAN's damages as a direct and proximate result of the aforesaid acts are in excess of $15,000.

116.   It has become necessary for MUSA UTHMAN to engage the services of an attorney to commence this action, and therefore, MUSA UTHMAN is entitled to reasonable attorneys' fees, costs, interest and damages in this action pursuant to Nevada law.

//
//
//
//
//
//
//
//

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, MUSA UTHMAN, prays for Judgment against Defendants and each of them as follows:

1. For general and special damages in the sum in excess of $75,000.00;

2. For an award of attorney's fees and costs;

3. For medical expenses;

4. For pre- and post-judgment interest; and

5. For such other and further relief as the Court deems just and proper under the circumstances.

DATED this 18th day of November 2021.

BY: _____
JORDAN P. SCHNITZER, ESQ.
Nevada Bar No. 10744
THE SCHNITZER LAW FIRM
9205 W. Russell Road, Suite 240
Las Vegas, Nevada 89148

GERALD F. NEAL, ESQ.
Nevada Bar No. 353
GERALD F. NEAL ESQ., LLC
6765 W Charleston Blvd, Suite 130
Las Vegas, NV 89146

IAN PINKERT, ESQ. *(pro hac pending)*
Florida Bar No. 84572
HALPERN, SANTOS & PINKERT, P.A.
150 Alhambra Circle, Suite 1100
Coral Gables, Florida 33134

*Attorneys for Plaintiff*